## THE FLEETWING.

### THE MAJOR BARRETT.

(District Court, E. D. Pennsylvania. March 22, 1902.)

#### No. 72.

1. COLLISION—OVERTAKING VESSEL—DUTY TO GIVE SIGNALS.

It is the duty of an overtaking vessel to see to it that she does not come so near the overtaken vessel as to cause danger of collision; and, if she does come within the line of danger, it is her duty to warn the other vessel by signals, whether she intends to pass or not.

2. SAME.

A steamship which overtook, ran down, and sank a small tug in the Schuylkill river in the daytime, and without giving any signal of her approach, was in fault, and is liable for the damages, in the absence of evidence clearly showing that the collision was caused by some fault of the tug.

In Admiralty. Suit for collision.

J. Warren Coulston and Alfred Driver, for the Fleetwing.

John G. Johnson, Horace L. Cheyney, and John F. Lewis, for the Major Barrett.

J. B. McPHERSON, District Judge. This is an action for a collision that took place in the Schuylkill river on October 2, 1900. The injury occurred about 5 o'clock in the afternoon; the tide being about half flood, and the day clear, with little or no wind. The Fleetwing—a small wooden vessel, 47 feet long, 13 feet wide, drawing about 4½ feet of water—had come down the Delaware river, had turned into the mouth of the Schuylkill, and was proceeding up the eastern side of the channel. The Major Barrett—a steamship 185 feet long, 35 feet wide, drawing 13 feet of water—had come up the Delaware river, and turned into the Schuylkill, two or three hundred yards astern of the tug. The Fleetwing was proceeding at her full speed, which was about seven miles an hour, and I think the evidence shows that, while the Major Barrett may not have been going at her full speed, she was nevertheless going faster than the tug. She certainly overtook the tug before either vessel had gone far from the mouth of the river, struck her a blow upon her port quarter near the stern, turned her over, and sank her, drowning two of the crew. The Major Barrett gave no signals whatever, because, as she argues, she had no intention of passing the tug, and therefore was under no obligation to give the signals required by the inland regulations. Whether or not she was bound to give the passing signals in the absence of an intention to pass, does not seem to me to be important to decide, for the evidence makes it abundantly clear that the steamship had come dangerously near the tug; and, under such circumstances, I think she was clearly at fault for having failed to give some signal that would have made her presence known, so that the tug might have been distinctly notified that the steamship was in the immediate neighborhood. As the steamship was the overtaking vessel, it was

her business to see to it that she did not come so near the tug as to make a collision probable, or, if she did approach within the line of danger, to give the tug such signals as would warn her that the steamship was at hand, and thus require her to be as vigilant as the circumstances called for. It seems to me that the case is on all fours with the decision of Judge Benedict in The Osceola (D. C.) 30 Fed. 383. I quote his opinion, substituting the names of the vessels involved in this suit:

"If, as the libelants contend, the Fleetwing made no sheer, the liability of the Major Barrett is clear. If, on the other hand, the Fleetwing did sheer, still the Major Barrett was in fault; for she was the overtaking vessel, and approached dangerously near to the Fleetwing without giving the signals required by the inspectors' rules. Had the signal been given, or had it been proved that the Fleetwing had been otherwise informed of the position of the Major Barrett, the Fleetwing would have been in fault for changing her course when she did; but, in the absence of such signal or such knowledge, her change was not a fault."

I do not think the evidence establishes satisfactorily that the tug did make a sudden sheer to port, as is claimed by the respondent. That she changed her course slightly to the westward may be true, but I am satisfied that, under the circumstances, she was not in fault, even if a change in some degree was made.

The libelant is entitled to a decree, and upon the proper application a commissioner will be appointed to assess the damages.